**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| TIMOTHY FERGUSON, an individual,<br><br>    Plaintiff,<br><br>    **v.**<br><br>COOK COUNTY, ILLINOIS, a municipal corporation,<br>THOMAS DART, Sheriff of Cook County, IL,<br>CITY OF CHICAGO, a municipal corporation,<br>RICHARD BEDNAREK, an individual and as an<br>employee of the Chicago Police Department and an<br>employee of D-BATS, Inc.,<br>JOHN D. BARLOGA, individually and as an employee of<br>the Cook County Sheriff,<br>ABELARDO MERCADO, individually and as an<br>employee of the Cook County Sheriff,<br>EDDIE ISHOO, individually and as an employee of the<br>Cook County Sheriff, and<br>D-BATS Inc., an Illinois corporation.<br><br>    Defendants. | **Complaint for Violation of Civil Rights §1983 and §1985 and for pendent State claims**<br><br><br>Case No. _____<br><br><br>Jury Trial:   ■ Yes   ☐ No<br>     *(check one)* |

## <u>COMPLAINT</u>

Plaintiff, TIMOTHY FERGUSON, by and through his attorneys, RICHARD J. WASIK and BEAU B. BRINDLEY, files this Complaint against the County of Cook, Thomas Dart in his capacity as Sheriff of Cook County, Illinois, and City of Chicago as well as Illinois licensed Private Investigator and Chicago Police Sergeant, RICHARD BEDNAREK, individually and in his capacity as a Chicago Police Department Sergeant, and Cook County Sheriff Police Officers, SERGEANT JOHN D. BARLOGA, EDDIE ISHOO, and ABELARDO MERCADO, in their individual capacities and as agents of the Cook County Sheriff and alleges as follows:

### Introduction

Illinois licensed private investigator and special process server, Richard Bednarek, an off-

1

duty Chicago Police Sergeant, with the explicit aid and assistance of Cook County Sheriff's Police, arrested property manager, Timothy Ferguson, allegedly for trespass to land and held him hostage until tenant, Shaun Halloran, appeared to accept summons and complaint in a forcible entry and detainer suit. Bednarek, to further his scheme, intentionally made false representations regarding Plaintiff Ferguson to responding Cook County Sheriff's Police officers. Cook County Sheriff Police officers and Bednarek intentionally conspired to illegally hold Timothy hostage despite the fact that the Sheriff's Police officers advised Bednarek, and Bednarek agreed, that as a special process server, Bednarek could not file and/or swear out a complaint for trespass to land.

## I.      The Parties to This Complaint

### A.      The Plaintiff(s)

1.      Plaintiff, TIMOTHY FERGUSON ("Timothy") at all times relevant hereto was and remains a resident of the County of Cook and State of Illinois.

### B.      The Defendant(s)

2.      Defendant, COOK COUNTY is a county and municipal corporation within the State of Illinois.

3.      Defendant, THOMAS DART, is the elected Sheriff of Cook County, Illinois, who employs Defendant Cook County Sheriff's Officers JOHN D. BARLOGA, EDDIE ISHOO, and ABELARDO MERCADO.

4.      Defendant, CITY OF CHICAGO, is a municipal corporation within the State of Illinois which employs the Defendant Sergeant, RICHARD BEDNAREK.

5.      Defendant, RICHARD BEDNAREK ("Bednarek"), is a resident of the County of Cook and State of Illinois and, at all times relevant hereto, was and is employed as a Chicago Police Department Sergeant.

6.      Defendant, JOHN D. BARLOGA ("Barloga"), is a resident of the County of Cook and State of Illinois.  At all times relevant hereto, Defendant Barloga was a Cook County Sheriff's Police Sergeant who oversaw, supervised, and commanded the Defendants, Ishoo and Mercado.

7.      Defendant, EDDIE ISHOO ("Ishoo"), is a resident of the County of Cook and State of Illinois and at all times relevant hereto, was employed as a duly appointed Cook County Sheriff's Police Officer.

8.      Defendant, ABELARDO MERCADO ("Mercado"), is a resident of the County of Cook and State of Illinois and at all times relevant hereto, was employed as a duly appointed Cook County Sheriff's Police Officer.

9.      Defendant, D-BATS Investigations ("D-Bats"), is an Illinois private investigations corporation with its principal place of business in Cook County, Illinois, and, on information and belief, at all times relevant hereto was owned and operated by Defendant Bednarek.

10.     All of the foregoing Defendants are sued in their individual capacities and in their capacities as agents of their respective employers, City of Chicago, Cook County Sheriff, County of Cook, and D-Bats Investigations, and all acted under color of law and in the scope of their employment in engaging in the actions alleged in this Complaint.

## II.     Basis for Jurisdiction and Venue

11.     This action is brought pursuant to 42 U.S.C. §1983 to redress the deprivation under color of law of Plaintiff's rights as secured by the United States Constitution.  Pendent state claim jurisdiction exists under claims of deprivation of Plaintiff's rights as secured by the Illinois Constitution and common law.

12.     This Court has jurisdiction pursuant to 28 U.S.C. §§1331 and 1367. Venue is proper under 28 U.S.C. §1391(b). All parties reside in this judicial district, and all acts and events giving rise to the claims asserted herein occurred in Cook County, Illinois and jurisdiction is proper in the Northern District of Illinois.

**III.     Facts Common to All Counts**

<u>**Decedent's Will**</u>

13.     Decedent, Ida I. Cardwell ("Ida"), passed away on December 6, 2012 leaving as the sole asset of her estate real property located at and commonly known as 7038 West 72nd Street, Chicago, Illinois ("Property").

14.     Ida's Last Will and Testament dated March 19, 2008 ("Will") granted to Dirk Ferguson, Sr., Ida's disabled son ("Dirk"), a life estate in the Property and established a trust for the benefit of Dirk. Ida's other son, Terry, was appointed as Trustee of Dirk's trust and he was awarded broad powers as Trustee.

15.     Ida's Will appointed Ida's daughter, Vickie Gow ("Vickie") as personal representative. However, Vickie was unwilling and unable to act and Plaintiff, Terry, acted as Trustee and personal representative. Plaintiff, Timothy, is Terry's son, and at all times relevant hereto acted as property manager of the Property.

16.     A probate estate was opened in the Circuit Court of Cook County, Illinois and on June 29, 2018, Vickie Gow was appointed supervised Executor of the Estate of Ida Cardwell, Deceased.

17.     In January 2019, Terry, as Trustee, leased the Property to tenant, Plaintiff, Shaun Halloran, who has paid rent to Terry and, at the time of the acts complained of herein, was residing in the Property.

4

18.     Defendant, Bednarek, at all times relevant hereto had no legal interest in the Property and is not an heir of Ida's Estate.  Defendant, Bednarek, has never held or owned any possessory or beneficial interest in the Property.

**A. May 9, 2019 Incident**

19.     On or about Thursday, May 9, 2019, Defendant, Bednarek, as a self-professed "agent for landlord," who is a Chicago Police Sergeant with the Chicago Police Department for Defendant, City of Chicago, entered the Property and caused a purported "Five Day Notice" attached hereto and incorporated herein as **Exhibit A**, to be served on tenant, Shaun Halloran's, girlfriend.  A videotape of the May 9, 2019, incident depicts Defendant, Bednarek, admitting to surveilling the Property and openly carrying a firearm.  Bednarek then entered onto the Property and attempted to force his way into the residence on the Property while holding the outside storm door open. When Mr. Halloran's girlfriend, Rena, opened the door in response to Bednarek's knocks, Bednarek attempted to enter into the residence and serve a 5-day eviction notice on Halloran. At that time, Rena attempted to prevent Bednarek from entering the residence but eventually walked away from the entry door. When she did, Bednarek reached into the residence and dropped the eviction notice inside the residence.

20.     Rena was so traumatized by Bednarek's actions that she called 911 to report that an unknown man kicked in the front door of the Property.

21.     Bednarek remained at the property until police officers responded to Rena's 911 call and falsely advised those officers that he, Bednarek,:

  a.   was a "process server";

  b.   that the Property "was not supposed to be rented out";

  c.   that Plaintiff, Timothy, "had rented the Property against the judge's orders."

22.     Thereafter, Plaintiff, Timothy, reviewed Defendant, Bednarek's, disciplinary record and discovered that Bednarek (so far) had thirty-two (32) disciplinary actions, two lawsuits having verdicts against him, and had killed a person through his intentional failure to secure medical attention for said individual.

**B. July 12, 2019 Incident**

23.     On Friday, July 12, 2019 at approximately 9:00 p.m., Shaun Halloran's dog walker, Paul Shinstine, entered the driveway of the Property in order to let Shaun's dog out of the residence.

24.     Shinstine was walking on the driveway approaching the home when a man in a black SUV pulled up behind him blocking his exit from the driveway. The driver, Defendant Bednarek, got out of the vehicle with a gun exposed in the back right side of his belt.  He asked Shinstine if he was Shaun.  Shinstine told him, "no" and Bednarek asked "who are you?" Shinstine responded that he was a friend of Shaun's and that he was there to let his dog out of the house. When Shinstine asked Bednarek who he was, Bednarek responded, "I'm the King of England.  You're going to jail for trespassing."

25.     At this time, Defendant Bednarek, purportedly was present at the Property as a special process server and, at all times relevant hereto, was employed by Defendant, D-Bats, Inc.

26.     Shinstine then telephoned the Property manager, Plaintiff, Timothy, to advise him there was an unknown man at the Property who had pulled a gun on him.

27.     Plaintiff, Timothy, immediately proceeded to the Property.

28.     When Plaintiff, Timothy, arrived at the Property a few minutes later, Defendant, Bednarek, approached him.  Bednarek knew that Plaintiff, Timothy, was the designated property manager from the May 9, 2019 incident at the Property.

29.     When Timothy arrived, Defendant, Bednarek, directly dialed the Cook County Sheriff's Police and described what Plaintiff, Timothy, was wearing and falsely alleged that "there's two guys trespassing" at the Property despite the fact that Plaintiff, Timothy, and Shinstine were still outside the subject residence and were on or about the driveway of the Property. Bednarek then demanded that Plaintiff, Timothy, leave the Property.

30.     In response to Bednarek's false trespassing allegation to the Cook County Sheriff's Police, Officer Mercado from the Cook County Sheriff's Police arrived. At that point, Bednarek identified himself to Mercado as a Chicago Police Department Sergeant. He then grabbed Timothy and pinned his arms behind his back preventing Timothy from leaving. Bednarek then demanded that Mercado handcuff and arrest Timothy for trespassing.

31.     Rather than properly investigate the situation, Mercado immediately complied with Bednarek's demands and handcuffed Timothy. Mercado then escorted Timothy to his squad car and seated him on the rear seat of said vehicle. Timothy remained handcuffed and detained in the rear of the squad car for the next two hours.

32.     After Timothy was handcuffed and put into Mercado's squad car, Bednarek falsely advised Mercado that Timothy was not supposed to be on the Property and that he, Bednarek, advised Timothy to leave and that Timothy refused.

33.     After Timothy was put into the police car, Bednarek approached Shinstine and demanded his identification. Shinstine then asked Mercado whether he had to provide his identification. Mercado told Shinstine that if he didn't want to go to jail, he should give his identification to Bednarek.

34. Shinstine then tendered his identification to Bednarek who retained it for the following two hours. Bednarek's vehicle also blocked Shinstine's car in the driveway's property thus preventing Shinstine from leaving.

35. Bednarek then illegally told Shinstine that he and Timothy were going to jail for trespassing if they did not get Shaun Halloran to come home. Effectively, Timothy and Shinstine's liberty was dependent upon Shaun Halloran coming to the Property and accepting a 5-day eviction notice.

36. Shortly after Bednarek received Shinstine's identification and wrongfully refused to return it, Cook County Sheriff's Police Officer Ishoo arrived on the scene.

37. After Ishoo was apprised of the circumstances then occurring at the Property, he advised Bednarek that he, Bednarek, could not file a complaint for trespass since he, Bednarek, had no ownership interest in the Property. Bednarek then verbally acknowledged that he knew that he could not file such a complaint against Timothy and stated that he was "just trying to scare" Timothy.

38. A short time later, Cook County Sheriff's Police Sergeant, John D. Barloga, arrived at the Property. After he was advised of the circumstances, he also advised Bednarek that that he, Bednarek, could not file a complaint for trespass against Timothy and advised him that "…a process server has no skin in the game, no right to the property." Despite this admonition from Barloga, Bednarek persisted in his demands that Timothy be charged with trespass to land but also admitted, "I'm trying to squeeze, of course."

39. While Timothy was illegally detained in the rear of Mercado's squad car, Bednarek repeatedly ordered him to call Shaun Halloran. Timothy called Shaun multiple times before he was able to reach him and ask him to return to the Property.

40.     While Timothy was restrained in the rear of Mercado's squad car, Bednarek repeatedly verbally assaulted, abused and berated Timothy and made derogatory comments to and about him. During each of these occurrences, Mercado, Ishoo and Barloga failed to protect Timothy and failed to prevent Bednarek's abusive behavior toward Timothy.

41.     While he was restrained in the rear of Mercado's squad car, Mercado and Ishoo advised Timothy that he would be released from the Cook County Sheriff's Office in Maywood, Illinois after he was booked and processed for trespass to land.  Mercado and Ishoo enabled Bednarek's illegal behavior by extending Timothy's detention in Mercado's squad car for almost two hours. Further, they were complicit with and participated in Bednarek's coercion of Timothy when they told him that he could obtain his release from custody if Shaun Halloran appeared on the scene to accept service of process. When Timothy was eventually able to reach Halloran by telephone he, Halloran, agreed to return to the Property.

42.     Mercado and Ishoo deliberately and affirmatively failed to investigate and failed to protect Plaintiff, Timothy, who remained handcuffed and in the rear seat of the Mercado's squad for approximately two hours.

43.     Mercado and Ishoo further violated Plaintiff's rights by creating sworn police reports containing materially false statements, *i.e.* attributing to Defendant, Bednarek, the ability to press charges for trespass, which legally baseless allegation was used unlawfully to detain Timothy.

44.     Defendants also withheld material and exculpatory facts and evidence from Timothy, including, but not limited to, withholding knowledge that would cause Timothy's release, *i.e.* that Bednarek lacked the standing to press charges for trespass to land.

45.     Defendants Bednarek, Mercado, Ishoo and Barloga manipulated the Plaintiff and/or allowed Timothy to be coerced, abused and manipulated in order falsely to imply to Timothy that

he was guilty of trespass even though Defendants knew there was no basis for Defendant

Bednarek to initiate a criminal complaint for trespass.

46.     After finally answering his telephone and being advised that he needed to return to the

Property, Shaun Halloran arrived at the subject scene. Upon his arrival, Bednarek immediately

confronted Shaun and demanded his driver's license. The Cook County Sheriff's Officers ran a

police computer search on Shaun.  Bednarek then demanded Shaun's telephone number which

Shaun refused to provide.  Bednarek then advised Shaun that he had "to be out in 5 days.  I'll be

back in 5 days to take your stuff out."

47.     At approximately 11:30 p.m., almost two hours after Timothy was falsely arrested,

handcuffed and placed into Mercado's squad car, Bednarek signed complaint refusals regarding

the trespassing charge. At that point, Timothy was finally allowed to exit Mercado's squad car,

the handcuffs were removed from his hands, and he was allowed to leave the scene.

**C. Defendant Bednarek's Long History of Official Misconduct Prior to the July 12, 2019 Illegal Arrest & Detention of Timothy Ferguson**

48.     Upon information and belief, Defendant Bednarek has a long history of citizen

complaints of misconduct registered against him with the City of Chicago. These complaints are

known as complaint registers or "CR's."

49.     Upon information and belief, prior to the July 12, 2019 false arrest, detention and abuse

of Plaintiff, Timothy Ferguson, Bednarek had at least 32 CR's registered against him with the

Chicago Police Department.

50.     It is unknown how many CR's that Bednarek has against him currently as Plaintiff's

counsel's Freedom of Information Act (FOIA) request for the following information was denied

on May 13, 2020:

*Any and all records, reports, notes, video/audio recordings, and investigative files of any regarding CPD Sergeant Richard Bednarek including, but not limited to: a) disciplinary records and reports, notes regarding investigation into a bases for any such discipline; b) all citizen complaints against Bednarek and the results of investigation into said complaints; c) any and all complaints/charges alleging any and all types of domestic battery and/or violence by him against another individual; d)all records, reports, reports, notes, video / audio recordings and investigative files of any kind whatsoever pertaining to any/all investigations into an incident involving Bednarek and a Timothy Ferguson on or about July 12, 2019 at or near 7038 W. 72nd Street, Chicago (Nottingham Park), Illinois; and e) any and all CPD Internal Affairs records, reports, notes, video/audio recordings and investigative files of any kind whatsoever pertaining to the aforementioned incident involving Bednarek and a Timothy Ferguson on or about July 12, 2019."*

The Chicago Police Department issued its response to this FOIA request and declined to provide the requested information about Bednarek and in support of that denial claimed:

In consultation with our Bureau of Internal Affairs (BIA) it was determined that CR number: 2019-0002810 is an open investigation and that disclosing the responsive records would interfere or obstruct the integrity of the investigation for future administrative and/or criminal charging. Therefore, the records are being withheld pursuant to 5 ILCS 140/7(1)(d)(i), which allows information to be withheld if the release of that information would:

(i)     interfere with pending or actually and reasonably contemplated law enforcement proceedings conducted by any law enforcement or correctional agency that is the recipient of the request; Complaint Register (CR) History and CR Summary Digests.

51.     Despite that fact that Bednarek's false arrest, detention and abuse of Timothy occurred nearly one year ago, the Chicago Police Department's Bureau of Internal Affairs has yet to conduct and/or conclude its investigation of the July 12, 2019 incident complained of herein.

52.     This failure to timely investigate the July 12, 2019 incident is a clear disregard for public safety and an example of the cover-ups and protections provided to police officers.

53.     An online search of Bednarek's behavior as a Chicago Police officer revealed that he has had at least two verdicts entered against him in his official capacity as a police officer and that he killed a person through his intentional failure to secure medical attention for said individual.

11

54.     Therefore, upon information and belief, to date Bednarek, a Sergeant with the Chicago Police Department, has at least 32 CR's and/or related investigations into his behavior, both on-duty and off-duty.

**D. Richard Bednarek should have been discharged from the Chicago Police Department before the July 19, 2019 Illegal Arrest and Detention of Timothy Ferguson**

**a. November 13, 2017 – Bednarek beats his wife**

55.     Prior to the July 12, 2019 illegal arrest and detention of Timothy Ferguson, Bednarek displayed a disturbing pattern of on-duty and off-duty violence that remained uninvestigated and/or unpunished by the City of Chicago, the Chicago Police Department and/or the Chicago Police Department Bureau of Internal Affairs.

56.     On or about November 12, 2017, Defendant Bednarek and his estranged wife, whose name on information and belief is Nancy Bednarek (hereinafter, "Nancy"), were in Nashville, Tennessee.

57.     On or about that date, while still in Nashville, Defendant Bednarek and Nancy visited several local drinking establishments and both consumed alcoholic beverages at said establishments.

58.     Shortly after midnight, Defendant Bednarek and Nancy left the last drinking establishment and returned to their truck which was parked in a nearby garage. When they got to the truck, a verbal argument ensued between Defendant Bednarek and Nancy. After the argument, Nancy sat on the front passenger seat of the truck and Defendant Bednarek drove the truck out of the garage.

59.     While they were traveling in the truck, Nancy was talking and gesturing and unintentionally struck Defendant Bednarek in the right side of his head. At that point, Defendant

12

Bednarek pulled the truck to the side of the road and stopped. Remaining in the driver's seat, Bednarek used one hand to disengage Nancy's seatbelt while using his other hand to reach over and open the front passenger door. Defendant Bednarek then struck Nancy three times on the left side of her chest and attempted to push her out of the truck. Nancy did not know if Defendant Bednarek struck her with a closed fist or an open hand but she felt excruciating pain from the blows. After striking Nancy, Defendant Bednarek exited the truck and walked around to the passenger side. He then opened the passenger door, attempted to untangle Nancy's seatbelt and then pulled her by her right arm, throwing her out of the truck. Nancy then landed on the pavement face-down on her knees. Defendant Bednarek then returned to the driver's seat and drove away.

60.     Nancy contacted the Metropolitan Nashville Police Department (MNPD) and MNPD officers responded to her location and transported her to their station where she was interviewed by a detective.

61.     After Nancy told the detective what had happened, the detective drove to Franklin, Tennessee (where Defendant Bednarek and Nancy had rented an apartment) in an attempt to interview Bednarek. When the detective arrived at the apartment and knocked on its door there was no response. The detective then returned to his station where he advised Nancy that the MNPD would seek an arrest warrant for Bednarek. Thereafter, the MNPD helped Nancy secure a guest room at a hotel.

62.     After Nancy checked into the hotel, she began to experience pain in her chest and had difficulty breathing. Hotel staff called an ambulance for her and Nancy was transported via said ambulance to Vanderbilt University Medical Center emergency room where she was treated. X-rays of her chest taken there failed to show any abnormalities.

63.     While Nancy was in the emergency room at Vanderbilt Medical Center, she called Defendant Bednarek to see where he was. During that telephone conversation, Bednarek stated to Nancy that she "had to tell everyone how drunk I was. That I caused this or he could get in trouble."

64.     Defendant Bednarek was subsequently arrested by Metropolitan Nashville Police and charged with domestic assault and coercion of a witness.

65.     Approximately two weeks later, Nancy attended a previously scheduled appointment with her primary care physician. She advised that doctor that she was still experiencing pain in her chest. Her doctor advised her that the x-rays at Vanderbilt University Medical Center might not have captured the full extent of her injuries and ordered a bone scan of Nancy's chest. That bone scan confirmed that Nancy had multiple cracked ribs on the left side of her chest where Defendant Bednarek had struck her.

66.     Nancy continued to reside with Defendant Bednarek in their Chicago home after the incident in Nashville. Defendant Bednarek was arrested and charged with domestic assault in Nashville but Nancy did not return to Nashville for the scheduled court date. She stated:

> "At that point, I just…was exhausted. I didn't know what was gonna happen. It meant me going back down there. I had talked, at length, to the district attorney about everything, and I just chose not to go. It was too much."

67.     The Civilian Office of Police Accountability (COPA) investigated these events (Log #: 1087478) and, although the criminal charges were dismissed, found by a preponderance of evidence that Defendant Bednarek engaged in conduct "that could have resulted in his conviction" for the misdemeanor crime of domestic violence.

68.     In 1996, after the passage of Title 18, United States Code, §922(g)(9) regarding the "Gun Ban for Individuals of a Misdemeanor Crime of Domestic Violence," the Criminal Division of the United States Attorneys' Office issued the following statement:

> The 1968 Gun Control Act, and subsequent amendments codified at 18 U.S.C. § 921 et seq., prohibit anyone convicted of a felony and anyone subject to a domestic violence protective order from possessing a firearm. The intended effect of this legislation is to extend the firearms ban to anyone convicted of "misdemeanor crime of domestic violence."
>
> This bill passed with almost unanimous support and represents Congress's recognition that "anyone who attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk, and should be prohibited from possessing firearms." Congressional Record, p. S11878, September 30, 1996. This new provision affects law enforcement in three interrelated ways. First, it will assist in preventing those individuals who have demonstrated a propensity for domestic violence from obtaining a firearm. Second, it will assist law enforcement by providing a tool for the removal of firearms from certain explosive domestic situations thus decreasing the possibility of deadly violence. Finally, it will serve as a federal prosecution tool in certain situations where alternatives have failed.

69.     This Act stated that:

> There is no law enforcement exception:  One of the provisions of this new statute removed the exemption that 18 U.S.C. § 925(a)(1) provided to police and military. Thus, as of the effective date, any member of any military *or any police officer who has a qualifying misdemeanor conviction is no longer able to possess a firearm, even while on duty…*  [Emphasis supplied.]

70.     Further, pursuant to Chicago Police Department policies and procedures, if an officer is convicted of a misdemeanor domestic battery charge and can no longer legally carry a weapon, he or she should be discharged from the Department.

71.     Thus, if an officer is investigated and found to have committed the offense of domestic violence or domestic battery, which prevents him from legally possessing a weapon, the Chicago Police Department must discharge that officer. Defendant, City of Chicago, has a compelling interest in conducting less than thorough investigations into domestic violence and other disqualifying misdemeanor allegations against its officers to prevent them from losing their jobs.

72.     Further, had the CPD disciplined Bednarek and separated him from the Chicago Police Department after he beat his wife, Nancy, he would not have been able to represent himself as a police officer to Cook County Sheriff's Police officers Mercado, Ishoo and Barloga and would not have been able to exploit his status as a Chicago Police Sergeant to demand that said Cook County officers handcuff and detain Plaintiff, Timothy Ferguson, and Timothy's unlawful arrest and extensive, unreasonable detention in the rear of Defendant Mercado's squad car could have been prevented.

73.     As stated above, COPA found that Defendant Bednarek engaged in conduct "that could have resulted in his conviction" for the misdemeanor crime of domestic violence. However, he was not separated from the Chicago Police Department in 2017 or any time thereafter. This failure to separate Bednarek from the Chicago Police Department clearly disregards public safety and shows the unwritten policy and custom of special and preferential treatment, protections and cover-ups provided to police officers.

74.     The effect of such a policy and custom is that officers, including, but not limited to, Richard Bednarek, feel that they can act with impunity and without fear of reprimand or discipline.

## Count I: Complaint For Civil Rights Violation Under 42 U.S.C. §1983 – Due Process

75.     Each of the above Paragraphs of this Complaint is incorporated as if restated fully herein.

76.     As described more fully above, all of the Defendants, while acting individually, jointly and in conspiracy, as well as under color of law and within the scope of their employment, deprived Plaintiff of his constitutional rights.

77.     In the manner described more fully above, the Defendants, deliberately and intentionally arrested and detained Plaintiff without lawful justification thus depriving Plaintiff of his constitutional rights.

78.     The Defendants' misconduct also directly resulted in unjust deprivations of life and liberty and deprivation of Plaintiff rights in violation of the due process clause of the Fourteenth Amendment to the United States Constitution.

79.     As a result of these violations of his constitutional rights, Plaintiff suffered extensive injuries including, but not limited to, severe emotional, psychological and physical injuries and distress.

80.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

### Count II: 42 USC Section 1983 False Imprisonment

81.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

82.     As described more fully above, all of the Defendants, while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, caused Plaintiff to be falsely imprisoned in violation of his constitutional rights.

83.     As a result of these violations, Plaintiff suffered extensive injuries including, but not limited to, severe, extensive emotional, psychological and physical injuries and distress.

84.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

### Count III: 42 U.S.C. Section 1983 Coerced Confession

85.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

17

86.     As more fully described above, one or more of the Defendants used unjustified and illegal threats and violence against Plaintiff in an attempt to coerce him to confess to a crime he did not commit.

87.     As a result of Defendants' unjustified and illegal use of force, Plaintiff suffered great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other consequential damages.

88.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the Plaintiff's rights.

### Count IV: 42 U.S.C. Section 1983 – 6th Amendment

89.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

90.     As described more fully above, one or more of the Defendants, all while acting individually, jointly, and in conspiracy, as well as under color of law and within the scope of their employment, denied Plaintiff, Timothy, his right to counsel in violation of his constitutional rights.

91.     As a result of these violations, Plaintiff suffered injuries, including but not limited to emotional distress, as is more fully alleged above.

92.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights.

### Count V – Section 1985(3) Conspiracy

### Conspiracy to Deprive Constitutional Rights

93.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

94.     As described more fully above, each of the Defendants conspired, directly or indirectly, for the purpose of depriving Plaintiff of his constitutional rights.

95.    In so doing, Defendants took actions in furtherance of this conspiracy, causing injury to Plaintiff.

96.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

**Count VI – Section 1983**

**Conspiracy to Deprive Constitutional Rights**

97.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

98.    Defendants reached  an agreement amongst themselves to falsely arrest Timothy and Paul and hold them in custody as hostages until Shaun appeared to accept summons and complaint. This agreement deprived Plaintiff of his constitutional rights, all as described in the various Paragraphs of this Complaint.

99.    Independently, before and after Plaintiff's arrest, each of the Defendants further conspired, and continued to conspire, to deprive Plaintiff of his rights to which he was lawfully entitled and which would have led to his timely release from the false charges as described in the various Paragraphs of this Complaint.

100.    In this manner, the Defendants acting in concert with other unknown co-conspirators, including persons who are not members of the Chicago Police Department and Cook County Sheriff's Police Department, have conspired by concerted action to accomplish an unlawful purpose by an unlawful means.

101.    In furtherance of the conspiracy, each of the co-conspirators committed overt acts as set forth herein and was an otherwise willful participant in said joint activity.

19

102.     As a direct and proximate result of the illicit prior agreement referenced above, Plaintiff's rights were violated, and Plaintiff suffered financial damages, as well as severe emotional, psychological and physical injury, distress and anguish, as more fully alleged above.

103.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of Plaintiff.

## Count VII – 42 U.S.C. 1983

### Failure to Intervene

104.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

105.     In the manner described above, during the constitutional violations described above, one or more of the Cook County Sheriff's Police Defendants (and other as-yet-unknown Cook County Sheriff's Police Officers) stood by without intervening to prevent the aforestated misconduct.

106.     As a result of these Defendants' failure to intervene to prevent the violation of Plaintiff's constitutional rights, Plaintiff suffered financial damages, as well as severe emotional, psychological and physical injury, distress and anguish, as more fully alleged above.  These Defendants had a reasonable opportunity to prevent this harm, but failed to do so.

107.     The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Plaintiff's constitutional rights.

## Count VIII – State Law Claim

### Malicious Prosecution

108.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

109.     Defendants caused Plaintiff to be improperly subjected to judicial proceedings for which there was no probable cause.  These judicial proceedings were instituted and continued

maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

110.    Defendants accused Plaintiff of criminal activities knowing those accusations to be false and without probable cause, and they made statements with the intent of exerting influence to institute and continue judicial proceedings against Plaintiff.

111.    Defendants' statements regarding Plaintiff's allegedly illegal conduct were made with knowledge that said statements were false.  In so doing, the Defendants fabricated reports to support their untrue version of events and withheld exculpatory information from Plaintiff, *i.e.* that there was no valid legal basis to arrest and detain him.

112.    The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

113.    As a result of this misconduct, Plaintiff suffered and continues to suffer financial damages, as well as severe emotional, psychological and physical injury, distress and anguish, as more fully alleged above.

## Count IX – State Law Claim

## Civil Conspiracy

114.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

115.    As described more fully in the preceding paragraphs, Defendants acting in concert with other known and unknown co-conspirators, conspired by concerted action to accomplish a purpose by unlawful means.

116.    In furtherance of the conspiracy, Defendants committed overt acts and were otherwise willful participants in the aforementioned joint activity.

117.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

118.     As a proximate result of Defendants' conspiracy, Plaintiff suffered and continues to suffer financial damages, as well as severe emotional, psychological and physical injury, distress and anguish, as more fully alleged above.

## Count X – State Law Claim

## Intentional Infliction of Emotional Distress

119.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

120.     The acts and conduct of the Defendants as set forth above were extreme and outrageous. Specifically, when Ishoo and Mercado advised Bednarek that he, Bednarek, could not sign a complaint for trespassing against Plaintiff, Bednarek replied, "I know. I just want to scare him." Despite said knowledge that Bednarek could not sign a trespass complaint, Defendants Bednarek, Ishoo and Mercado failed to release Plaintiff.

121.     The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff, as is more fully alleged above.

122.     Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff, and thereby constituted intentional infliction of emotional distress.

123.     The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others.

124.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered and continues to suffer financial damages, as well as severe emotional, psychological and physical injury, distress and anguish, as more fully alleged above.

## Count XI – State Law Claim

## False Imprisonment

125.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

126.    Plaintiff was restrained against his will by Defendants by physical force, handcuffs, and retention of his personal property.

127.    Defendants acted without lawful or reasonable grounds to arrest or imprison Plaintiff.

128.    Defendants detained and imprisoned Plaintiff unlawfully and without any valid legal basis or reasonable, articulable suspicion that Plaintiff had committed any crime.

129.    As a proximate result of Defendants' wrongful acts, Plaintiff suffered and continues to suffer financial damages, as well as severe emotional, psychological and physical injury, distress and anguish, as more fully alleged above.

## Count XII – State Law Claim

## False Police Report

130.    Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

131.    Defendant Bednarek knowingly transmitted or caused to be transmitted to Defendants, Cook County and Cook County Sheriff's Police Officers a false and untrue report that the offense of trespass was being committed.

132.    At the time of such transmission, Defendant Bednarek knew that there was no valid, reasonable or rational legal ground for making the report and, further, that no reasonable ground existed for the belief that such an offense had been committed.

133.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered and continues to suffer financial damages, as well as severe emotional, psychological and physical injury, distress and anguish, as more fully alleged above.

## Count XIII – State Law Claim

### Respondeat Superior

134.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

135.     In committing the acts alleged in the preceding paragraphs, each of the Defendants were members of, and agents of, the Chicago Police Department or Cook County Sheriff's Police Department acting, at all times relevant hereto, within the scope of employment and under color of law.

136.     Defendants City of Chicago and County of Cook are liable as respective principals for all torts committed by its agents.

137.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including, but not limited to, severe emotional, psychological and physical injury, trauma, distress, anguish and financial injuries as more fully alleged above.

## Count XIV – State Law Claim

### Indemnification

1.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

2.     Illinois law provides that public entities are directed to pay any tort judgment for compensatory damages for which its employees are liable which arise out of or which are incurred within the scope of said employee's employment activities.

3.     The Defendants are or were employees of the Chicago Police Department and Cook County Sheriff's Police Department, who acted within the scope of their employment in committing the misconduct described herein.

4.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including, but not limited to, severe emotional, psychological and physical, injury, trauma, distress, anguish and financial injuries as more fully alleged above.

**Count XV – State Law Claim**

**Unreasonable Detention**

1.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

2.     Each of the individual Defendants, without lawful justification and without any valid legal basis, and without any reasonable belief that a crime had been committed, unreasonably detained Plaintiff, Timothy Ferguson, in the rear of Defendant Mercado's squad car and kept him restrained in handcuffs for nearly two hours.

3.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including, but not limited to, severe emotional, psychological and physical, injury, trauma, distress, anguish and financial injuries as more fully alleged above.

4.     The Defendants are or were employees of the Chicago Police Department and/or Cook County Sheriff's Police Department, and each acted within the scope of his employment in committing the misconduct described herein.

**Count XVI – State Claim**

**Unlawful Detention**

5.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

6.     Plaintiff was restrained against his will by Defendants by physical force, the placement of handcuffs upon his wrists, and the retention of his personal property.

7.     Defendants arrested and imprisoned Plaintiff without having reasonable grounds, any other lawful basis or any reasonable suspicion that he had committed a crime.

8.     Defendants unlawfully detained Plaintiff.

9.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including, but not limited to, severe emotional, psychological and physical, injury, trauma, distress, anguish and financial injuries as more fully alleged above.

### Count XVII – State Claim

### Kidnapping

1.     Each of the Paragraphs of this Complaint is incorporated as if restated fully herein.

2.     Defendant Bednarek, by threat of force, placed Plaintiff in handcuffs and Defendant Mercado moved Plaintiff, against Plaintiff's will, from the public area in front of 7038 W. 72nd Street, Chicago, Illinois into Mercado's Cook County Sheriff's police squad car that was parked at or near said address.

3.     Defendants Bednarek, Mercado, Ishoo, and Barloga confined Plaintiff, against Plaintiff's will, in the rear of the aforementioned squad car for almost two hours.

4.     As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including, but not limited to, severe emotional, psychological and physical, injury, trauma, distress, anguish and financial injuries as more fully alleged above.

**WHEREFORE**, Plaintiff, TIMOTHY FERGUSON, respectfully requests that this Court enter judgment in his favor and against Defendants, CITY OF CHICAGO, COUNTY OF COOK, RICHARD BEDNAREK, JOHN D. BARLOGA, ABELARDO MERCADO, EDDIE

ISHOO, and D-BATS, INC., awarding compensatory damages, in an amount not less than Twenty Five Million Dollars, costs, and attorneys' fees, along with punitive damages, in an amount not less than Fifty Million Dollars, against each of the Defendants, as well as such other and further relief this Court deems appropriate.

## JURY DEMAND

Plaintiff, TIMOTHY FERGUSON, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted,

/s/ *Richard J. Wasik*

_____

Richard J. Wasik, One of Plaintiff,
Timothy Ferguson's, Attorneys

/s/ *Beau B. Brindley*

_____

Beau B. Brindley, One of Plaintiff,
Timothy Ferguson's, Attorneys

Richard J. Wasik, Esq.
Law Offices of Richard Wasik
1152 W. Newport, #1
Chicago, Illinois  60657
708/807-0019
708/597-2537 Fax
Wasiklaw@gmail.com

Beau B. Brindley, Esq.
Law Offices of Beau B. Brindley
53 West Jackson Boulevard Suite 1410
Chicago, IL 60604-4176
312-765-8878
info@brindleylaw.com

27